**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **AT&T TELEHOLDINGS, INC. and AT&T WIRELINE HOLDINGS, LLC,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | |
| | § | **Civil Action No. 3:26-CV-2919-L** |
| **CHARTER COMMUNICATIONS, INC. And SPECTRUM MANAGEMENT HOLDING COMPANY, LLC** | § | |
| | § | |
| **Defendants.** | § | |

# DEFENDANTS' MOTION TO DISMISS COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT OF MOTION

CHRISTOPHER J. SCHWEGMANN
cschwegmann@lynnllp.com
State Bar No. 24051315

**LYNN PINKER HURST & SCHWEGMANN, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone: (214) 918-3800
Facsimile: (214) 981-3839

CHRISTIAN D. CARBONE
ccarbone@loeb.com
THOMAS P. JIRGAL
tjirgal@loeb.com
EDWARD J. DELMAN
edelman@loeb.com
JACOB M. SIEVERS
jsievers@loeb.com

**LOEB & LOEB LLP**
345 Park Avenue
New York, New York 10154
Telephone: (212) 407-4000

321 North Clark Street, Suite 2300
Chicago, Illinois 60610
Telephone: (312) 464-3100

**ATTORNEYS FOR DEFENDANTS CHARTER COMMUNICATIONS, INC. AND SPECTRUM MANAGEMENT HOLDING COMPANY, LLC**

# TABLE OF CONTENTS


Page

INTRODUCTION ..... 1

BACKGROUND ..... 3

I. The Parties and the Technology at Issue ..... 3

II. Charter's Allegedly "False" Advertising ..... 4

ARGUMENT ..... 7

I. Applicable Standard on Rule 12(b)(6) Motions to Dismiss ..... 7

II. AT&T's Federal False Advertising Claim Is Meritless ..... 8

A. AT&T Fails to Plead a Prima Facie Case as to Charter's Use of the Term "Fiber-Powered" ..... 8

1. Charter's Internet Services Are Powered by Fiber ..... 9

2. Charter's Use of the Term "Fiber-Powered" Is Not Misleading ..... 12

3. AT&T Fails to Plausibly Allege that Charter's Use of "Fiber-Powered" Deceives Any Consumers ..... 15

4. AT&T Fails to Plausibly Allege that Charter's Use of "Fiber-Powered" Has Materially Affected Any Consumer's Purchasing Decision ..... 16

B. AT&T Fails to Plead a Prima Facie Case as to Charter's Use of "Fiber Broadband Network" ..... 18

1. Context Defeats Any Claim that Charter's Use of "Fiber Broadband Network" Is Literally False ..... 19

2. Charter's Use of the Term "Fiber Broadband Network" Is Not Misleading and Does Not Deceive Consumers ..... 20

3. AT&T Fails to Plausibly Allege that Charter's Reference to Its Network as a "Fiber Broadband Network" Materially Affected Any Consumer's Purchasing Decision ..... 21

III. AT&T Has No Common Law Unfair Competition Claim ..... 22

CONCLUSION ..... 23

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Bd. of Internal Med. v. Salas Rushford*,
114 F.4th 42 (1st Cir. 2024)....................14, 15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................3

*AT&T Mobility LLC v. T-Mobile USA Inc.*,
2023 WL 311287 (E.D. Tex. Jan. 18, 2023).................... 9-10

*Austin's Nat. Frozen Pops, Inc. v. Jonny Pops, LLC*,
809 F. Supp. 3d 476 (W.D. Tex. 2025)....................13, 15, 18

*Best Glide Aviation Survival Equip., Inc. v. Tag-Z, LLC*,
2024 WL 3488129 (W.D. Tex. July 19, 2024)....................23

*Boltex Mfg. Co., L.P. v. Ulma Piping USA Corp.*,
389 F. Supp. 3d 507 (S.D. Tex. 2019)....................9

*Boltex Mfg. Co. v. Galperti, Inc.*,
827 F. App'x 401 (5th Cir. 2020).................... 22-23

*Clorox Co. P.R. v. Procter & Gamble Com. Co.*,
228 F.3d 24 (1st Cir. 2000)....................11

*Collins v. Morgan Stanley Dean Witter*,
224 F.3d 496 (5th Cir. 2000)....................3

*Doe v. Robertson*,
751 F.3d 383 (5th Cir. 2014)....................7, 17

*Dupart v. Roussell*,
497 F. Supp. 3d 102 (E.D. La. 2020)....................9

*Estrella-Rosales v. Taco Bell Corp.*,
2020 WL 1685617 (D.N.J. Apr. 7, 2020)....................12

*Faris v. Petit Pot, Inc.*,
2023 WL 12143972 (C.D. Cal. Sep. 26, 2023)....................15

*Fink v. Time Warner Cable*,
714 F.3d 739 (2d Cir. 2013)....................12

*Greater Hous. Transp. Co. v. Uber Techs., Inc.*,
155 F. Supp. 3d 670 (S.D. Tex. 2015) ....................9, 10, 19

*Ill. Tool Works, Inc. v. Rust-Oleum Corp.*,
955 F.3d 512 (5th Cir. 2020) ....................16

*Ins. King Agency, Inc. v. Digit. Media Sols., LLC*,
2022 WL 2759072 (S.D. Cal. July 14, 2022) ....................20

*Island Peak Grp., LLC v. Ownwell, Inc.*,
2025 WL 1643441 (N.D. Tex. June 10, 2025) .................... 7, 12-13

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014)....................22

*McCanless v. Eleeo Brands*,
2026 WL 2291224 (C.D. Cal. Aug. 7, 2026)....................13, 19

*Misko v. Backes*,
2017 WL 3328123 (N.D. Tex. July 14, 2017),
*adopted by* 2017 WL 3316155 (N.D. Tex. Aug. 3, 2017) ....................7

*Molzan v. Bellagreen Holdings, LLC*,
112 F.4th 323 (5th Cir. 2024) ....................7, 8, 22

*New.Net, Inc. v. Lavasoft*,
356 F. Supp. 2d 1090 (C.D. Cal. 2004) ....................22

*Osmose, Inc. v. Viance, LLC*,
612 F.3d 1298 (11th Cir. 2010) ....................15

*Outlaw Lab., LP v. Shenoor Enter., Inc.*,
371 F. Supp. 3d 355 (N.D. Tex. 2019) ....................7

*Petrobras Am., Inc. v. Samsung Heavy Indus. Co.*,
9 F.4th 247 (5th Cir. 2021) ....................3

*Pizza Hut, Inc. v. Papa John's Int'l, Inc.*,
227 F.3d 489 (5th Cir. 2000) .................... *passim*

*Regalo Int'l LLC v. Aborder Prods.*,
2025 WL 2483167 (N.D. Tex. Aug. 28, 2025)....................7, 8, 17, 23

*Sensible Foods, LLC v. World Gourmet, Inc.*,
2012 WL 566304 (N.D. Cal. Feb. 21, 2012) ....................10

*Taylor Publ'g Co. v. Jostens, Inc.*,
216 F.3d 465 (5th Cir. 2000) ....................23

*Time Warner Cable, Inc. v. DIRECTV, Inc.*,
2007 WL 1138879 (S.D.N.Y. Apr. 16, 2007)....12

*Time Warner Cable, Inc. v. DIRECTV, Inc.*,
497 F.3d 144 (2d Cir. 2007)....11

*Weight Watchers Int'l, Inc. v. Noom, Inc.*,
403 F. Supp. 3d 361 (S.D.N.Y. 2019).... 13-14

*Wysong Corp. v. APN, Inc.*,
889 F.3d 267 (6th Cir. 2018) ....10, 14

**Statutes**

15 U.S.C. § 1125(a) .... *passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)....7, 23

## INTRODUCTION

AT&T's lawsuit is based on a theory of falsity that makes no sense and is belied by its own factual allegations. AT&T's complaint admits that Charter's internet services are delivered over a signal pathway that extends fiber-optic cable all the way to its customers' neighborhoods, if not to their homes. Yet AT&T contends it is somehow objectionable for Charter to refer to its network infrastructure as a "Fiber Broadband Network" or to its internet services as "fiber-powered." According to AT&T, Charter's use of these terms constitutes false advertising because they supposedly mean that Charter's internet services are 100% fiber in all cases. AT&T's allegations cannot survive a motion to dismiss. The terms it is challenging do not—either on their own or in context—communicate a message regarding the specific percentage of fiber in Charter's network, let alone that its network is 100% fiber in all cases. AT&T's complaint depends on this implausible premise and should be dismissed.

AT&T's allegations regarding Charter's use of the term "Fiber Broadband Network" are emblematic of its failure to state a claim. AT&T contends that Charter's use of this term on its website leads consumers to believe that all of Charter's internet offerings are delivered over a signal pathway that is 100% fiber to the home in all locations. Yet, the Charter webpage cited by AT&T actually explains, with visual diagrams and an FAQ, that Charter's "fiber-powered" internet services utilize coaxial cable to connect customers to its network. A consumer would have to ignore all the detailed explanation on this webpage, including visual diagrams, to take away the message that Charter's "Fiber Broadband Network" is 100% fiber in all cases. A false advertising claim cannot, however, be based on pulling words out of context in the manner that AT&T is attempting with its Complaint.

AT&T's challenge to Charter's use of the term "fiber-powered" to describe its internet services is similarly flawed. AT&T contends this term is "literally false" because it means (and can only mean) that Charter's services are delivered over a signal pathway that is 100% fiber to the home. But AT&T never explains how these words convey this message. Nor does it allege facts suggesting a substantial percentage of reasonable consumers are taking away such a message from Charter's use of this designation. "Powered" is not a synonym for "100%" or "exclusively." It is instead a word that is used to highlight the role that a component part of a product or service plays, and even then, there is no clear standard of what "powered" means. AT&T's own complaint admits that fiber-optic technology plays a critical role in the internet services that Charter offers regardless of how its customers are connected to Charter's network, and it acknowledges that Charter discloses to consumers that its "fiber-powered" internet service is delivered over a coaxial connection. There is nothing false or misleading about Charter's use of this term in its advertising.

AT&T wants the Court to believe that Charter is purposefully deceiving consumers by "hiding" the fact that it connects customers to its network with coaxial cable. Yet its complaint admits that Charter explains this very fact on its website and in its advertising while truthfully highlighting the role that fiber plays in powering its internet services. A company bent on hiding its coaxial connection does not illustrate it, explain it in an FAQ, and disclose it on-screen in its advertising. More importantly, it is AT&T's burden at the pleading stage to allege adequate facts to plausibly support its contention that reasonable consumers are being confused or misled by the accurate manner in which Charter is characterizing its network and internet services. AT&T has failed to do so. Accordingly, and for the reasons set forth in more detail below, AT&T's complaint should be dismissed in its entirety.

## BACKGROUND[1]

### I. The Parties and the Technology at Issue

Charter is one of the country's leading telecommunications companies, offering internet, mobile, TV, and home phone services to over 70 million homes and businesses across 45 states. *See* App. 12-13; Cmplt. ¶¶ 15, 26, 31. AT&T is a competitor to Charter in the telecommunications sector, and, of particular relevance to this action, in the internet services industry. *See* Cmplt. ¶¶ 24, 26.

Charter delivers internet service to its customers over a nationwide network infrastructure that uses fiber-optic cable for "the majority of the network path." *See* App. 5-9; Cmplt. ¶¶ 1, 4, 33, 35-36. The way customers access the network, however, differs based on their location. In some locations, customers connect to Charter's network with fiber-optic cable, in which case the signal pathway to the customer's home is composed entirely of fiber-optic cable. *See* App. 5-9; Cmplt. ¶¶ 4-5, 29-30, 36. Charter describes internet service delivered over this type of fiber-to-the-home ("FTTH") connection as being "100% Fiber." *See* App. 5-9; Cmplt. ¶¶ 4, 30, 36-37. In other cases, customers connect to Charter's network with coaxial cable. *See* App. 5-9; Cmplt. ¶¶ 2, 4, 29, 33, 35-36. In such cases, the signal pathway to the customer's home is composed entirely of fiber-optic cable from the network hub to a node in the customer's neighborhood, with the final connection to the customer's home being coaxial cable. *See* App. 5-9; Cmplt. ¶ 36. Charter

[1] Except where noted otherwise, the facts set forth below are taken from the Complaint and are presumed to be true for purposes of this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Other facts come from Charter's website and from Charter's e-mail communications to customers, both of which are expressly referenced in the Complaint and therefore subject to review on a motion to dismiss. *See, e.g.*, *Petrobras Am., Inc. v. Samsung Heavy Indus. Co.*, 9 F.4th 247, 252 n.2 (5th Cir. 2021) ("At the 12(b)(6) stage, the court may consider the complaint in its entirety, including 'documents incorporated into the complaint by reference.'") (quoting *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011)); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (documents attached to a motion to dismiss are part of the pleadings if referred to in the complaint and central to the plaintiff's claims).

describes internet service delivered over this type of hybrid fiber-coaxial ("HFC") connection as being "Fiber-Powered." *See* App. 5-9; Cmplt. ¶ 36. As AT&T acknowledges, and as shown below, all of this is clearly explained to consumers on Charter's website. *See* Cmplt. ¶¶ 30, 36-37; App. 5-9.




## II. Charter's Allegedly "False" Advertising

Because fiber-optic technology forms the backbone of Charter's nationwide network, Charter uses the term "fiber" in various ways when describing its network infrastructure and

internet services. AT&T has taken issue with two of those ways. *First*, Charter uses the term "Fiber Broadband Network" to describe the core network infrastructure it uses to deliver service to its customers, *see* App. 5-9; *id.* at 12-15; Cmplt. ¶ 30, and has done so in two specific contexts: (1) on a website page dedicated to explaining its "Fiber Broadband Network" and internet services, *see* App. 5-9; Cmplt. ¶ 30, and (2) in an August 21, 2026 e-mail (the "Acquisition Announcement") that Charter sent to former Cox Communications ("Cox") customers upon the completion of Charter's acquisition of Cox, *see* App. 12-15; Cmplt. ¶ 31.

The website page does nothing more than provide detailed information about the composition of Charter's network infrastructure, including the difference between delivery systems that are entirely fiber-optic and delivery systems that incorporate coaxial cable for the final connection. *See* App. 5-9. Meanwhile, the Acquisition Announcement—which was sent only to Cox customers who became Charter customers after Charter's acquisition of Cox—merely welcomed those customers to Charter and explained Charter's range of services. *See* App. 12-15 (explaining that Charter offers "Internet, Mobile, TV and Home Phone products [that are] delivered over our Spectrum Fiber Broadband Network").

*Second*, Charter uses the term "Fiber-Powered Internet" to describe the critical role fiber technology plays in its HFC network. *See* App. 8 ("What is Fiber-Powered Internet? Fiber-Powered Internet uses an advanced HFC network to deliver the most reliable Internet service. Data travels over high-speed fiber-optic lines to a nearby fiber node in your neighborhood. From there, a coaxial connection delivers Internet to the premises."); Cmplt. ¶ 29. Per the Complaint, Charter has used the term in a range of television commercials. *See* Cmplt. ¶¶ 39-54. The commercial that AT&T itself describes as "typical" includes an on-screen disclosure that indicates, "Spectrum Internet® is powered by fiber and connected to the premises by coaxial lines." *Id.* ¶ 56.




AT&T complains that Charter's use of these two terms is either literally false or misleading, because they supposedly give the false impression that Charter's overall network infrastructure is solely comprised of fiber-optic cables, regardless of where a customer lives. *See, e.g.*, Cmplt. ¶¶ 2-3, 9. AT&T does not allege that any actual consumers have in fact been deceived or misled by Charter's advertising; nor does it allege any facts showing that consumers are likely to be confused by Charter's advertising. And while AT&T alleges in conclusory terms that consumers "consider the underlying delivery technology material," Cmplt. ¶ 28, nowhere does the Complaint contain facts about how consumers understand "fiber-powered," or whether any consumer chose Spectrum Internet believing it to be delivered entirely over fiber. Nevertheless, AT&T asserts that Charter should be held liable for informing customers of the critical role that fiber plays in powering the internet services they receive. AT&T's claims are meritless, and the Court should dismiss the Complaint in its entirety.

## ARGUMENT

### I. Applicable Standard on Rule 12(b)(6) Motions to Dismiss

"To survive a Rule 12(b)(6) motion, [a] plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Molzan v. Bellagreen Holdings, LLC*, 112 F.4th 323, 331 (5th Cir. 2024) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Island Peak Grp., LLC v. Ownwell, Inc.*, 2025 WL 1643441, at *2 (N.D. Tex. June 10, 2025) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Outlaw Lab., LP v. Shenoor Enter., Inc.*, 371 F. Supp. 3d 355, 361 (N.D. Tex. 2019) (citation omitted). If a plaintiff's allegations "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Misko v. Backes*, 2017 WL 3328123, at *1 (N.D. Tex. July 14, 2017) (citation modified), *adopted by* 2017 WL 3316155 (N.D. Tex. Aug. 3, 2017).

Although the Court "must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to" AT&T, *Regalo Int'l LLC v. Aborder Prods.*, 2025 WL 2483167, at *2 (N.D. Tex. Aug. 28, 2025) (citation omitted), "[a] complaint must fail if it offers only 'naked assertions devoid of further factual enhancement,'" *Doe v. Robertson*, 751 F.3d 383, 387 (5th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Regalo Int'l*, 2025 WL 2483167, at *2.

## II. AT&T's Federal False Advertising Claim Is Meritless

AT&T seeks to hold Charter liable for its use of "fiber-powered" and "Fiber Broadband Network" pursuant to Section 43(a) of the Lanham Act. *See* Cmplt. ¶¶ 72-81. That statute imposes liability on any person who:

> [O]n or in connection with any goods or services, … uses in commerce any word, term, name, … or any combination thereof, or any … false or misleading description of fact, or false or misleading representation of fact, which … in commercial advertising or promotion, misrepresents the nature, characteristics, [or] qualities … of his or her … goods, services, or commercial activities.

15 U.S.C. § 1125(a)(1)(B). To survive a motion to dismiss on a Section 43(a) false advertising claim, a plaintiff must plausibly allege each of the following five elements:

> (1) A false or misleading statement of fact about a product; (2) [s]uch statement either deceived or had the capacity to deceive a substantial segment of potential consumers; (3) [t]he deception was material, in that it is likely to influence the consumer's purchasing decision; (4) [t]he product is in interstate commerce; and (5) [t]he plaintiff has been or is likely to be injured as a result of the statement at issue.

*Molzan*, 112 F.4th at 334. "The failure to prove the existence of any element of the prima facie case is fatal to [a] plaintiff's claim." *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 495 (5th Cir. 2000). At the pleading stage, the failure to plausibly allege any element is equally fatal. *See, e.g.*, *Regalo Int'l*, 2025 WL 2483167, at *6 (noting that all five elements of prima facie claim must be adequately alleged to successfully plead a false advertising claim).

### A. AT&T Fails to Plead a *Prima Facie* Case as to Charter's Use of the Term "Fiber-Powered"

The bulk of the Complaint focuses on Charter's use of the term "fiber-powered" to describe internet services delivered over an HFC network. *See generally* Cmplt. AT&T asserts that this characterization "blurs" the supposed distinction between (1) internet services delivered over an HFC network that extends fiber to a node in the customer's neighborhood, and (2) internet services

delivered over an FTTH network that extends fiber to the customer's home. *See id.* ¶¶ 6, 36. According to AT&T, this supposed blurring "leave[s] a substantial segment of reasonable consumers with the misleading impression that 'Fiber-Powered Internet' delivers internet connectivity to consumers' homes through fiber alone," warranting "an injunction and damages." *Id.* ¶¶ 6, 9. AT&T's claim fails because it does not plausibly allege (1) that Charter's description of its internet services as "fiber-powered" is literally false or misleading; (2) that a substantial segment of consumers were, or were likely to be, deceived by Charter's use of that term; or (3) that Charter's use of that term was material to any consumer's purchasing decision.

**1. Charter's Internet Services Are Powered by Fiber**

A prerequisite for any Section 43(a) false advertising claim is that a plaintiff must plausibly allege that the challenged term is either literally false or misleading. *See, e.g.*, *Dupart v. Roussell*, 497 F. Supp. 3d 102, 119 (E.D. La. 2020) (explaining that commercial claims must be either "literally false as a factual matter" or "may be literally true or ambiguous but … implicitly convey a false impression") (citation omitted). AT&T alleges that the term "fiber-powered" has only one meaning: a 100% fiber-optic network, specifically with fiber-optic cables connecting into customers' homes. *See* Cmplt. ¶¶ 2-3, 6, 9, 29, 32, 34-35. From this, AT&T expressly alleges that Charter's description of its HFC network as "fiber-powered" is literally false. *See id.* ¶¶ 9, 73-74.

But AT&T has not pleaded and cannot show that "fiber-powered" is literally false. "The standard for proving literal falsity is rigorous." *Greater Hous. Transp. Co. v. Uber Techs., Inc.*, 155 F. Supp. 3d 670, 699 (S.D. Tex. 2015) (citing *Buetow v. A.L.S. Enters., Inc.*, 650 F.3d 1178, 1185 (8th Cir. 2011)). "For a statement to be literally false, the statement must be false on its face." *Boltex Mfg. Co., L.P. v. Ulma Piping USA Corp.*, 389 F. Supp. 3d 507, 511 (S.D. Tex. 2019) (internal quotation marks and citation omitted); *see also AT&T Mobility LLC v. T-Mobile USA Inc.*, 2023 WL 311287, at *3 (E.D. Tex. Jan. 18, 2023) ("A literally false statement is one that is bald-

faced, egregious, undeniable, and over the top.") (citation modified, and quoting *Schering-Plough Healthcare Prods. Inc. v. Schwarz Pharma, Inc.*, 586 F.3d 500, 513 (7th Cir. 2009)). Crucially, "[o]nly an unambiguous message can be literally false; if the language at issue is susceptible to more than one reasonable interpretation, the advertisement cannot be literally false." *Greater Hous. Transp. Co.*, 155 F. Supp. 3d at 700.

The term "fiber-powered" does not unambiguously communicate the message that Charter's internet service is delivered over a signal pathway that is 100% fiber. Indeed, it does not communicate *any* message regarding the percentage of fiber in Charter's network. *See Wysong Corp. v. APN, Inc.*, 889 F.3d 267, 270-71 (6th Cir. 2018) (rejecting plaintiff's allegation that an advertiser's visual depiction of the ingredients in its pet food products communicates an unambiguous message about the quality of the ingredients); *Sensible Foods, LLC v. World Gourmet, Inc.*, 2012 WL 566304, at *6 (N.D. Cal. Feb. 21, 2012) ("Plaintiff cannot credibly claim that the words 'veggie' and 'apple,' when used to describe products containing veggies and apples, are literal falsities.") (citation modified). A reasonable consumer viewing the claim could understand it to mean exactly what Charter intends it to mean—that Charter's HFC network incorporates fiber technology, but is not composed exclusively of fiber components. Given that this is a reasonable takeaway from Charter's claim, if not the most reasonable takeaway, it cannot be literally false.

Charter's reference to internet services delivered over an HFC network (in which the "F" stands for "fiber," *see* Cmplt. ¶ 2) as "fiber-powered" is also consistent with the dictionary definition of "powered." "Powered" means "to supply with power and especially motive power," or "to give impetus to," https://www.merriam-webster.com/dictionary/powered#dictionary-entry-2, and is used in plain English to indicate that a particular thing plays a critical role in helping a machine or a system function. For example, the Cambridge Dictionary provides as an example

sentence, "Most computers are now powered by Intel chips." https://dictionary.cambridge.org/dictionary/english/power. That sentence does not suggest that Intel chips are the computers' sole source of energy; indeed, Intel chips are not an energy source at all. Instead, it means that Intel chips play a key role in making the computers work.

Charter's description of internet services delivered over an HFC network as "fiber-powered" fits the definition of the word "powered," for much as computers are "powered by Intel chips," Charter's HFC network—and the internet service it delivers to customers—are powered by fiber. The Complaint concedes that point, admitting repeatedly that Charter's HFC network provides internet connectivity via fiber-optic cables and, in fact, consists entirely of fiber-optic cable except for the final connection between a neighborhood node and a customer's house. *See id.* ¶¶ 2, 4, 9, 29, 33. Thus, Charter's statements that its internet service delivered via an HFC network is "fiber-powered" are entirely accurate, because fiber-optic cables do play a critical role in delivering internet services to Charter's customers. The claim is literally true.[2]

Finally, Charter's use of "fiber-powered" in its television commercials cannot be literally false because, as AT&T concedes, Charter's commercials include a disclaimer that expressly states that Spectrum's fiber-powered internet service is delivered over a coaxial connection. *See* Cmplt. ¶ 56. When reviewing claims of literal falsity, courts are required to view the challenged term in its full context, *see Pizza Hut*, 227 F.3d at 495 n.5, which includes taking into account "the presence

[2] Insofar as AT&T also tries to argue that "fiber-powered" is false by necessary implication, *see* Cmplt. ¶¶ 9, 73, that argument fails for the same reason. A claim cannot be false by necessary implication unless the allegedly false message is as readily recognizable as if it were explicitly stated. *Clorox Co. P.R. v. Procter & Gamble Com. Co.*, 228 F.3d 24, 35 (1st Cir. 2000); *accord Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 158 (2d Cir. 2007). AT&T cannot meet that burden here since the term "fiber-powered" does not communicate an unambiguous message that Charter's internet service is 100% fiber in context or otherwise. To the contrary, the term simply means that fiber plays a critical role in the internet service, which is true.

of a disclaimer or similar clarifying language," *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013) (holding that disclaimers can "defeat a claim of deception").

Of course, AT&T asserts that Charter's disclaimer "is inadequate to cure the deception caused by Charter's 'Fiber-Powered Internet' claim." Cmplt. ¶ 56. But Charter's disclaimer is clearly visible at the bottom of the screen during Charter's commercials, *see id.*, and such disclaimers are adequate to cure any alleged falsity in a commercial, *see, e.g.*, *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 2007 WL 1138879, at *4 (S.D.N.Y. Apr. 16, 2007) (finding that visible disclaimer at bottom of DIRECTV commercial rendered pricing claim not false); *Estrella-Rosales v. Taco Bell Corp.*, 2020 WL 1685617, at *2 (D.N.J. Apr. 7, 2020) (explaining that "anyone familiar with television ads for consumer products knows that … disclaimers are often presented at the end of the ad toward the bottom of the screen," and finding that such disclaimers constitute a reasonable business practice). Charter's disclaimer negates any possibility that consumers will be confused by Charter's advertising, let alone that such advertising is literally false.

**2. Charter's Use of the Term "Fiber-Powered" Is Not Misleading**

In the alternative to its allegation of literal falsity, AT&T alleges that Charter's characterization of its internet services as "fiber-powered" is misleading. *See* Cmplt. ¶¶ 9, 75. Specifically, AT&T alleges that fiber-powered "conveys to reasonable consumers the misleading impression that Spectrum Internet is a fiber-to-the-home service," and leaves consumers "with the misleading impression that 'Fiber-Powered Internet' delivers internet connectivity to consumers' homes through fiber alone." *Id.* ¶¶ 2, 9. For the reasons discussed below, those allegations—and others like them—are insufficient.

AT&T's assertion that Charter's use of the term "fiber-powered" is misleading fails to meet even the basic plausibility standard. Plausibility requires, at minimum, sufficient factual content to permit "the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged," *Island Peak*, 2025 WL 1643441, at *2 (citation omitted). AT&T's entire theory rests on the premise that "fiber-powered" somehow leads consumers to believe that said services are delivered via a fiber-to-the-home connection. *See* Cmplt. ¶¶ 2-3, 9, 32, 34. That premise lacks any factual underpinning. AT&T does not point to any objective definition or understanding of the term "fiber-powered" to which a reasonable consumer would look when analyzing Charter's use of that term. *See McCanless v. Eleeo Brands*, 2026 WL 2291224, at *6 n.4 (C.D. Cal. Aug. 7, 2026) (rejecting that phrase "powered by plants" could be false or misleading because plaintiff could not identify "an objective definition or understanding of the term," and therefore could not "identify how th[at] labeling would be false and misleading to the reasonable consumer"). It is difficult to understand how a reasonable consumer would be misled by that term.

The Complaint likewise supplies no factual basis for AT&T's premise that consumers read "fiber-powered" to mean exclusively fiber. AT&T offers only a theory of why they might, *see* Cmplt. ¶¶ 32, 34-35, but pleads no facts showing that consumers in fact draw that conclusion, let alone that it would be reasonable for them to do so. By failing to allege any facts that explain why reasonable consumers would conclude that "fiber-powered" means 100% fiber, AT&T has not given the Court a basis to make that same inferential leap. *See, e.g.*, *Austin's Nat. Frozen Pops, Inc. v. Jonny Pops, LLC*, 809 F. Supp. 3d 476, 488 (W.D. Tex. 2025) (finding that Jonny Pops failed to plausibly allege that GoodPops' use of "USDA Organic" label was misleading because Jonny Pops did "not provide the Court with any facts supporting that GoodPops being labelled organic makes consumers think anything other than what the label says—that they are organic"); *Weight Watchers Int'l, Inc. v. Noom, Inc.*, 403 F. Supp. 3d 361, 371-72 (S.D.N.Y. 2019) (finding that complaint did not plausibly allege why advertisement featuring single customer's review of

defendant's weight-loss system "viewed in context, would be construed by a consumer as quoting anything more than a single user's subjective experience with Noom").

AT&T's implied-falsity theory also fails because the Complaint pleads no facts about how consumers actually understand "fiber-powered." Where a statement is not literally false, the plaintiff must ultimately prove with evidence—not the factfinder's "own intuitive reaction"—that the statement actually deceived consumers (to recover damages) or had a tendency to deceive them (to obtain an injunction). *Pizza Hut*, 227 F.3d at 497-98 (citation omitted). Charter does not ask the Court to hold AT&T to that evidentiary burden now, and AT&T need not attach a survey to its complaint. But at the pleading stage, the question is still "whether the facts in the complaint support a plausible inference that the challenged advertisements in fact misled a significant number of reasonable consumers." *Wysong Corp.*, 889 F.3d at 271; *see also Am. Bd. of Internal Med. v. Salas Rushford*, 114 F.4th 42, 65 (1st Cir. 2024) (affirming judgment on the pleadings where the pleading contained "no allegations whatsoever indicating that any consumers have actually been misled by the challenged statements").

AT&T's allegations fall well short of that minimal pleading standard. The Complaint offers no facts from which this Court could infer that any reasonable consumer has interpreted "fiber-powered" to mean that Charter's HFC network is exclusively comprised of fiber-optic cables. What the Complaint offers instead is a label, *see* Cmplt. ¶¶ 9, 75, and a supposed motive, *see id.* ¶¶ 6, 29, 34.

That motive cannot fill the gap. AT&T's assertions that Charter acted "deliberately" are themselves conclusory. *See* Cmplt. ¶¶ 6, 34. They are also flatly contradicted by the facts AT&T does plead: Charter's website diagrams the coaxial connection, *see id.* ¶ 36; poses and answers the very question AT&T says Charter conceals, *see id.* ¶ 37; and the commercial AT&T describes as

"typical" displays the statement "Spectrum Internet® is powered by fiber and connected to the premises by coaxial lines," *see id.* ¶ 56. A company bent on hiding its coaxial connection does not illustrate it, explain it in an FAQ, and print it on-screen. *Cf. Faris v. Petit Pot, Inc.*, 2023 WL 12143972, at *7 (C.D. Cal. Sep. 26, 2023) (rejecting conclusory allegation that defendant intended to mislead consumers into believing product was made in France, and noting that such allegation was contradicted by defendant's own labeling). Absent well-pleaded facts of actual or intended deception, AT&T cannot maintain its claim that "fiber-powered" is misleading, and the claim should be dismissed. *See Pizza Hut*, 227 F.3d at 497; *Salas Rushford*, 114 F.4th at 65-66.

**3. AT&T Fails to Plausibly Allege that Charter's Use of "Fiber-Powered" Deceives Any Consumers**

Because AT&T has not plausibly alleged that Charter's use of the term "fiber-powered" is misleading, it also has not plausibly alleged that it has deceived a substantial segment of consumers. In cases where plaintiffs fail to plead literal falsity, courts treat whether a claim is misleading and whether a claim is deceptive as the same analysis. *See, e.g.*, *Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1318-19 (11th Cir. 2010) (explaining that whether an advertisement is literally false or merely misleading determines the plaintiff's burden on the consumer-deception element); *Austin's Nat. Frozen Pops*, 809 F. Supp. 3d at 488 (assessing together whether product names were misleading and whether they misled "a substantial segment of consumers"). As noted above, AT&T has failed to plead that "fiber-powered" is literally false, and has likewise failed to plausibly allege that "fiber-powered" is likely to, or does in fact, mislead any consumers. Accordingly, AT&T has failed to plead the second element of a *prima facie* claim as to Charter's use of the term "fiber-powered."

### 4. AT&T Fails to Plausibly Allege that Charter's Use of "Fiber-Powered" Has Materially Affected Any Consumer's Purchasing Decision

AT&T's federal false advertising claim as to "fiber-powered" fails as a matter of law as to both falsity and deception. It also should be dismissed because AT&T fails to plausibly allege the third element of a *prima facie* claim: materiality. In determining materiality, courts focus on whether a plaintiff has plausibly alleged that "reasonable consumers would have a tendency to rely on th[e] misleading statement of fact in making their purchasing decisions." *Pizza Hut*, 227 F.3d at 502. To survive dismissal, the Complaint must plausibly allege that reasonable consumers would have been likely to rely on Charter's supposed misleading labeling of its internet service as "fiber-powered"—which, according to AT&T, tricks consumers into believing that said service is delivered over a fiber-to-the-home network, *see, e.g.*, Cmplt. ¶ 9—in making their purchasing decisions.

AT&T has not done so. To be sure, AT&T makes numerous allegations about the importance that *Charter* itself supposedly attaches to 100% fiber-to-the-home internet services. *See* Cmplt. ¶¶ 4, 7, 36-38, 62. But the Fifth Circuit has explained—albeit in reviewing a trial record—that a defendant's subjective belief that consumers will or should care about a particular factor or marketing term is irrelevant to determining whether consumers do, in fact, care about that particular factor or term. *See Pizza Hut*, 227 F.3d at 503 (explaining that there is no precedent that "stands for the proposition that the subjective intent of the defendant's corporate executives to convey a particular message is evidence of the fact that consumers in fact relied on the message to make their purchases"); *Ill. Tool Works, Inc. v. Rust-Oleum Corp.*, 955 F.3d 512, 518 (5th Cir. 2020) (rejecting argument that a defendant's advertising campaign—"no matter how aggressive or how much the defendant believed that the advertising would affect consumers"—is itself evidence of materiality). AT&T's allegations regarding Charter's views on the importance or supposed

superiority of 100% fiber networks "do[] not address the ultimate issue of materiality" and simply are not relevant here. *Pizza Hut*, 227 F.3d at 503.

The Complaint does not offer a single allegation that consumers are likely to be influenced by Charter's labeling of its HFC network as "fiber-powered." AT&T does not allege that consumers even understand the difference between a network that extends fiber to a customer's home versus a network that extends fiber to a network node in their neighborhood; nor that they ascribe any value to the relative percentage of fiber in their connection, as opposed to the actual performance and price of the specific service plan for which they are signing up; nor anything else, for that matter.

Instead, AT&T offers two sets of irrelevant allegations. *First*, AT&T vaguely asserts in a single sentence that "[c]onsumers choosing a business or residential internet provider consider the underlying delivery technology material." Cmplt. ¶ 28. Putting aside that this sentence is entirely unsubstantiated and therefore should be disregarded, *see, e.g.*, *Robertson*, 751 F.3d at 387 (explaining that courts should not accept "naked assertions devoid of further factual enhancement") (citation omitted); *Regalo Int'l*, 2025 WL 2483167, at *7 (disregarding plaintiff's allegations that defendant manipulated Amazon reviews because they were "mere naked assertions devoid of further factual enhancement") (citation modified and omitted), that allegation, even if taken as true, does not support AT&T's claim of materiality. The question is not whether consumers "consider" the way their internet is delivered; it is whether consumers would be likely to be influenced by that factor. Moreover, even if consumers do consider the way their internet is delivered, no facts are offered to even suggest that consumers place a specific premium on services that are 100% fiber to the home versus services that are 100% fiber to a node in the customer's neighborhood. This single allegation does nothing for AT&T.

*Second*, AT&T alleges that "[s]peed, reliability, latency, and overall service quality are among the most important factors consumers weigh when choosing an internet service provider." Cmplt. ¶ 65; *see also id.* ¶ 28 ("Perceived speed, reliability, and latency of the services substantially affect consumer choice in internet service providers."). But those allegations also do not help AT&T's materiality claim, because the Complaint offers no facts showing that consumers choosing to prioritize those factors would be swayed by a service provider's decision to market its internet offering as "fiber-powered." The Court cannot, from the fact that consumers care about the speed, reliability, and latency of their internet services, plausibly infer that consumers would prefer internet service that is delivered via a network that is 100% fiber-to-the-home over one that is 100% fiber-to-the-node. *See Austin's Nat. Frozen Pops*, 809 F. Supp. 3d at 486 (rejecting allegation that consumers believed GoodPop's products were healthy for children, and purchased the products for that reason, simply because GoodPop used images of children holding its products). AT&T does not plausibly allege materiality, and therefore cannot maintain a Section 43(a) claim as to Charter's use of the term "fiber-powered."

### B. AT&T Fails to Plead a *Prima Facie* Case as to Charter's Use of "Fiber Broadband Network"

As almost an afterthought, AT&T also challenges Charter's use of the term "Fiber Broadband Network" to describe its overall network infrastructure. *See* Cmplt. ¶¶ 1, 3, 6, 29-31. As with Charter's use of the term "fiber-powered," AT&T asserts that Charter's reference to its overall network infrastructure as a "Fiber Broadband Network" on its website and in the Acquisition Announcement "hide[s] the fact that its network mainly connects to customers' homes using copper wire" and "blurs the distinction between 100% fiber and the inferior hybrid copper-based service." *Id.* ¶¶ 3, 6. None of these allegations plausibly allege falsity, deception, materiality, or, insofar as the Acquisition Announcement is concerned, injury.

### 1. Context Defeats Any Claim that Charter's Use of "Fiber Broadband Network" Is Literally False

AT&T's challenge to Charter's use of the term "Fiber Broadband Network" fails right out of the gate. As already discussed, "the standard for . . . literal falsity is rigorous," because "[o]nly an unambiguous message can be literally false." *Greater Hous. Transp. Co.*, 155 F. Supp. 3d at 699-700. "Fiber Broadband Network" does not meet that rigorous standard, because even when heard or read in isolation, the term cannot plausibly be understood to unambiguously refer to a network infrastructure consisting exclusively of fiber-optic cables. Instead, insofar as "Fiber Broadband Network" can have any objective meaning, it means exactly what it states: that it is a broadband network largely consisting of fiber-optic cable and relying on fiber technology. And that, of course, is literally true. *See* Cmplt. ¶¶ 4, 29, 33; App. 5-9. Moreover, insofar as "Fiber Broadband Network" lacks any objective meaning, it also cannot, as a matter of law, be literally false. *See McCanless*, 2026 WL 2291224, at *6 n.4.

AT&T's claim of literal falsity is even weaker when viewed in context. *See, e.g.*, *Pizza Hut*, 227 F.3d at 495 n.5 ("When construing [an] allegedly false or misleading statement to determine if it is actionable under section 43(a), the statement must be viewed in the light of the overall context in which it appears."). AT&T's own allegations make clear that the website page it alleges "fails to disclose" the scope of Charter's 100% fiber service, Cmplt. ¶ 30, in fact, could not be clearer in defining that scope. AT&T concedes that this page includes a side-by-side diagram illustrating exactly how "100% Fiber" and "Fiber-Powered" internet services are delivered, showing consumers that the former runs fiber directly to the premises while the latter runs fiber to a node in the customer's neighborhood, where it then transitions to coaxial cable. *See id.* ¶ 36. AT&T also concedes that the same page poses—and answers—the question "What is the difference between Fiber-Powered Internet and 100% Fiber?" *Id.* ¶ 37. In effect, AT&T cites a

webpage as evidence of deception while conceding that the very same webpage explains in consumer-facing language (with diagrams and FAQs) precisely the distinction AT&T claims Charter is concealing. This context defeats a claim of literal falsity. *See Ins. King Agency, Inc. v. Digit. Media Sols., LLC*, 2022 WL 2759072, at *5 (S.D. Cal. July 14, 2022) (finding that defendants' advertisements did not falsely imply that defendants were licensed insurers due to disclaimer on webpage expressly stating that defendants were not insurers).

The larger context of the Acquisition Announcement likewise undermines any claim of literal falsity. The Acquisition Announcement stated, "**If you're not familiar with Spectrum, we are America's Connectivity Company®,** now available to more than 70 million customers in 45 states providing Internet, Mobile, TV and Home Phone products delivered over our Spectrum Fiber Broadband Network." App. 12-15. No reasonable consumer could read that sentence and believe the term "Fiber Broadband Network" means that the identified services, including mobile services, are delivered over a signal pathway that is 100% fiber. After all, the sentence states that Charter's "Mobile, TV and Home Phone products"—products that do not involve home internet—are also delivered over Charter's "Fiber Broadband Network." *Id.* In fact, Charter's use of "Fiber Broadband Network" in the Acquisition Announcement makes clear to consumers that the term is used to refer to the overall network infrastructure that supports all of Charter's service offerings, and not to the manner that any specific service is delivered. In sum, Charter's use of "Fiber Broadband Network," when considered in the contexts AT&T has identified, does not lend itself to any plausible finding of literal falsity.

### 2. Charter's Use of the Term "Fiber Broadband Network" Is Not Misleading and Does Not Deceive Consumers

To the extent AT&T alleges in the alternative that the term "Fiber Broadband Network" is misleading, *see* Cmplt. ¶¶ 3, 31, 75, that theory fails as well. *First*, as discussed above, the context

in which Charter uses "Fiber Broadband Network" renders it implausible that a reasonable consumer would find that term to be misleading. Indeed, those contexts make it readily apparent to consumers that Charter is not using that term to describe a network consisting exclusively of fiber-optic cables but is instead using it as an umbrella term for its overall infrastructure.

*Second*, as with "fiber-powered," AT&T offers no allegations from which this Court can infer that a segment of reasonable consumers is confused by the term "Fiber Broadband Network," or interpret that term to mean an exclusively fiber-optic system. There is not a single allegation that consumers would be likely to encounter that term, as used in its context, and understand it to have the meaning AT&T ascribes to it. Instead, AT&T relies on the same conclusory allegations as its challenge to "fiber-powered," Cmplt. ¶¶ 9, 75, and those allegations fail for the same reason as discussed in Section II.A.2.[3]

Finally, because AT&T does not plausibly allege that Charter's use of the term "Fiber Broadband Network" is misleading, it does not plausibly allege that consumers were actually or likely to be deceived by that term. *See supra* Section II.A.3. AT&T fails to meet both the first and second elements of a *prima facie* Section 43(a) claim, necessitating dismissal.

### 3. AT&T Fails to Plausibly Allege that Charter's Reference to Its Network as a "Fiber Broadband Network" Materially Affected Any Consumer's Purchasing Decision

Given the sparse treatment AT&T gives to its allegations regarding Charter's use of the term "fiber broadband network," it is unsurprising that AT&T offers no allegations that any consumer, never mind a reasonable consumer, has been swayed in its purchasing decision based

---

[3] AT&T also alleges that consumers will be misled because of Charter's alleged misappropriation of "fiber's 'halo effect.'" *See* Cmplt. ¶¶ 6, 29. But AT&T has not alleged what this "halo effect" is, or in what way this so-called effect impacts consumers. In fact, AT&T has not alleged any facts showing that a fiber "halo effect" even exists beyond AT&T's say-so. Given the utter lack of substantiation behind this phrase, the Court cannot rely upon it to infer that reasonable consumers have been misled or confused by Charter's use of the term "Fiber Broadband Network."

on Charter's decision to describe its network infrastructure as a "Fiber Broadband Network." It is AT&T's burden to plausibly allege that "reasonable consumers would have a tendency to rely on" Charter's description of its core network as a "Fiber Broadband Network" "in making their purchasing decisions." *Pizza Hut*, 227 F.3d at 502. And just as with "fiber-powered," *see supra* Section II.A.4, AT&T fails to meet that burden. There are no facts pled showing that consumers attach any particular significance to the term "fiber" in this context, or that consumers prefer to subscribe to a provider whose entire network infrastructure consists of fiber-optic cables, including in areas where the consumer does not even live. Indeed, apart from the three sentences discussed above in Section II.A.4 (referencing paragraphs 28 and 65 of the Complaint), AT&T alleges nothing about the impact Charter's use of "Fiber Broadband Network" has on consumers, and thus fails the materiality requirement.[4]

## III. AT&T Has No Common Law Unfair Competition Claim

In addition to its federal false advertising claim, AT&T asserts a single count for unfair competition under Texas common law. The Fifth Circuit "generally analyze[s] Lanham Act false advertising claims and common law unfair competition claims together," *Boltex Mfg. Co. v. Galperti, Inc.*, 827 F. App'x 401, 409 (5th Cir. 2020) (per curiam); *see also Molzan*, 112 F.4th at 334 n.17 ("Unfair competition analysis under federal law is the same for claims under Texas

[4] AT&T's claim as to the Acquisition Announcement fails for an additional reason. A plaintiff suing under § 1125(a) "ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising," which "occurs when deception of consumers causes them to withhold trade from the plaintiff." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014). The Acquisition Announcement was sent only to "former Cox customers … welcoming them to Spectrum." Cmplt. ¶ 31. The Complaint does not allege that any recipient was considering AT&T, lives where AT&T Fiber is available, or remained a Charter customer because of the phrase "Fiber Broadband Network." Absent such facts, AT&T has not plausibly alleged that this e-mail caused it any injury. *Cf. New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090, 1118 (C.D. Cal. 2004) (rejecting false advertising claim based on post-purchase communications with customer).

common law."), and district courts in the Fifth Circuit routinely dismiss common law unfair competition claims when the plaintiff has failed to plead a viable Lanham Act false advertising claim, *see, e.g.*, *Regalo Int'l*, 2025 WL 2483167, at *8; *Best Glide Aviation Survival Equip., Inc. v. Tag-Z, LLC*, 2024 WL 3488129, at *7 (W.D. Tex. July 19, 2024). In line with that precedent, for all the reasons that AT&T has failed to state a viable claim under the Lanham Act, it has likewise failed to state a viable common law unfair competition claim. Count II fails for an independent reason as well: Texas unfair competition requires an independent tort or illegal act that interfered with the plaintiff's ability to conduct its business, *see Taylor Publ'g Co. v. Jostens, Inc.*, 216 F.3d 465, 486 (5th Cir. 2000), and AT&T identifies none apart from the false advertising theory that fails for the reasons above. The Court should dismiss that claim.

## CONCLUSION

For all the foregoing reasons, Defendants Charter Communications, Inc. and Spectrum Management Holding Company, LLC respectfully request that the Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), dismiss the Complaint in its entirety with prejudice and award such other and further relief as the Court deems just and proper.

Dated: October 23, 2026

Respectfully submitted,

**LYNN PINKER HURST & SCHWEGMANN, LLP**

*/s/ Christopher J. Schwegmann*
Christopher J. Schwegmann
State Bar No. 24051315
cschwegmann@lynnllp.com
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone: (214) 918-3800
Facsimile: (214) 981-3839

**LOEB & LOEB LLP**

*/s/ Christian D. Carbone*
Christian D. Carbone
(admitted *pro hac vice*)
ccarbone@loeb.com
Edward J. Delman
(admitted *pro hac vice*)
edelman@loeb.com
Jacob M. Sievers
(admitted *pro hac vice*)
jsievers@loeb.com
345 Park Avenue
New York, New York 10154
Telephone: (212) 407-4000

Thomas P. Jirgal
(admitted *pro hac vice*)
tjirgal@loeb.com
321 North Clark Street, Suite 2300
Chicago, Illinois 60610
Telephone: (312) 464-3100

**ATTORNEYS FOR DEFENDANTS CHARTER COMMUNICATIONS, INC. AND SPECTRUM MANAGEMENT HOLDING COMPANY, LLC**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above document has been served via ECF on counsel of record on October 23, 2026.

*/s/ Christian D. Carbone*
Christian D. Carbone

244018288